d

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

SHAWN JOHNSON,                           CIVIL DOCKET NO. 1:23-CV-00168
Plaintiff

VERSUS                                   JUDGE ROBERT R. SUMMERHAYS

BROOKSHIRE GROCERY CO ET AL,    MAGISTRATE JUDGE PEREZ-MONTES
Defendants

---

## REPORT AND RECOMMENDATION

Before the Court are parallel Motions to Remand (ECF No. 9) and to Strike (ECF No. 14).

I.    Background

The lawsuit arose from a slip and fall accident that occurred in a Brookshire grocery store in Winfield, Louisiana. Johnson filed suit in the Eighth judicial District Court in Winn Parish Louisiana. In his initial petition, Johnson named Brookshire and Matt Kaye ("Kaye") – an alleged employee – as defendants. ECF No. 1-2 at 1.

Defendants removed on February 7, 2023 based upon diversity jurisdiction.[1] Brookshire alleged that K was improperly joined as a defendant, and in fact, neither worked for Brookshire at the relevant location nor had anything to do with the

---

[1] Johnson is a Louisiana resident. Brookshire is a Texas corporation.

1

incident.  Accordingly, Brookshire claimed that Kaye was improperly joined to defeat federal jurisdiction.

Shortly after removal, Johnson moved to amend his complaint.  ECF No. 8. Johnson maintained that brookshire had failed to provide complete information regarding the identity of the store manager before suit was filed. Johnson further claimed that he discovered the identity of 2 relevant employees after receiving responses to discovery. Specifically, Johnson requested and received an incident report which indicated that Thomas Graham ("Graham"), the store manager, and Elizabeth Bishop ("Bishop"), the operational excellence manager, were employed at the relevant location.  ECF No. 8-1.  At that point, the court granted Johnson leave to amend, but withheld ruling on Johnson's remand motion.  ECF No. 11, 12.

Brookshire opposed the motion to amend, opposes the motion to remand (ECF No. 17), and has now moved to strike the order allowing Johnson to file first amended complaint.  ECF No. 14.  Regardless of the identities of any individual defendants, the gravamen of the present dispute is whether the individual defendants have been improperly joined.

## II.  Law and Analysis

### A.  Diversity Jurisdiction

Federal courts have limited subject matter jurisdiction and cannot entertain cases unless authorized by the Constitution or federal legislation. *See Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). The party invoking federal jurisdiction must overcome an unfavorable presumption. *See Coury*, 85 F.3d at 248.  That party bears

the burden of establishing that jurisdiction exists. *See Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 775 (5th Cir. 1986).

The diversity statute permits federal district court jurisdiction over lawsuits between citizens of different states in which the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *Stangel v. A-1 Freeman North America, Inc.*, 64 Fed. Appx. 416, *1 (5th Cir. 2003). Subject matter jurisdiction must exist at the time of removal, based on the allegations contained in the complaint. *See St. Paul Reinsurance Co. Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

Remand is proper if at any time the Court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). The removal statute, 28 U.S.C. § 1441, must be strictly construed, and any doubt as to the propriety of removal must be resolved in favor of remand. *See Gasch v. Hartford Accident & Indemnity Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

## B.    Improper Joinder

To demonstrate improper joinder of resident defendants, the removing defendants must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *See Gasch v. Hartford Accident & Indemnity Co.*, 491 F.3d 278, 281 (5th Cir. 2007). Where a defendant relies upon the second approach, the threshold question is whether there is any reasonable basis upon which the plaintiff may recover against a resident defendant. The removing party bears the

burden of proof in this regard. *See Gasch*, 491 F.3d at 281. A court must resolve all contested factual issues and legal ambiguities in favor of the plaintiff. *See Gasch*, 491 F.3d at 281; *see also Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 309 (5th Cir. 2005); *see also McKee v. Kansas City Southern Railway Co.*, 358 F.3d 329, 334 (5th Cir. 2004) (the district court must take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff).

A court may consider the viability of a disputed claim in one of two ways. *See Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 573 (5th Cir. 2004), cert. den., 544 U.S. 992 (2005). First, a court may conduct a "Rule 12(b)(6)-type analysis," looking at the allegations of the complaint to determine whether the complaint states a facially plausible claim against the resident defendant.[2] *See Smallwood*, 385 F.3d at 573. A court does not determine whether the plaintiff will actually – or even probably – prevail on the merits of the claim, but looks only for a possibility that it might do so. *See Guillory*, 434 F.3d at 309. Ordinarily, if a claim survives this analysis, there is no improper joinder. *See Smallwood*, 385 F.3d at 573.

Alternatively, in limited circumstances, a court may conduct a "summary inquiry" where a plaintiff may have misstated or omitted discrete facts that would illustrate the propriety of joinder. *See Smallwood*, 385 F.3d at 573. A summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the resident defendant. *See Smallwood*, 385 F.3d at 574. "[A]ny piercing of the pleadings should not entail

substantial hearings.  Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity. . . .  [T]he inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *See Smallwood*, 385 F.3d at 574.

Given the nature of the disputed allegations – but with the important caution that the Court cannot and should not conduct a "summary judgment inquiry" – the Court exercises its discretion to consider summary inquiry evidence here.

## C.   <u>Personal Liability</u>

La. R.S. 9:2800.6 provides for the general duty of a merchant for the condition of its aisles, passageways, and floors.  *See Littleton v. Wal-Mart Stores, Inc.*, 99-390 (La. App. 3 Cir. 12/1/99), 747 So.2d 701, 703, *writ den.*, 2000-0804 (La. 5/5/00), 761 So.2d 546.  "Most of the jurisprudence regarding merchant liability in the area of slip or trip and fall involves a hazard caused by spilled liquid or an item such as a box temporarily present in an aisle."  LSA-R.S. 9:2800.6 applies to those cases."[3] *Crooks v. National Union Fire Insurance Co.*, 620 So. 2d 421, 424 (La. App. 3d Cir. 1993), *writs den.*, 629 So.2d 391, 392 (La. 1993).  "The statute is aimed at 'slip and fall' or 'trip and fall' cases.  It is meant to apply to customers falling in stores."  *Littleton*, 747 So. 2d at 703.

However, if a customer slips or trips and falls because of the direct and simultaneous negligence of a store employee, the burden of proof under ordinary negligence principles is applicable to the employee – not the burden of proof under

La. R.S. 9:2800.6.  *See Littleton*, 747 So.2d at 703 (citing *Frelow v. St. Paul Fire & Marine Ins. Co.*, 93-759 (La. App. 3 Cir. 2/2/94), 631 So.2d 632, 635); *Crooks*, 620 So.2d at 424).  Louisiana Civil Code articles 2315, 2317.1, and Louisiana jurisprudence all clarify that the threshold question in any negligence inquiry is whether the defendant owed the plaintiff a duty.  *See Gros v. Warren Properties, Inc.*, 2012 WL 5906724, at *6 (E.D. La. 2012).  Thus, under Louisiana law, an individual employee may be liable to a third person if the plaintiff can prove that the employee breached a personal duty to that third person. *See Canter*, 283 So. 2d at 721.

In *Canter v. Koehring Co.*, the Louisiana Supreme Court established a test to determine if the non-diverse defendant owes such a duty to the plaintiff. *Id.*  A court will find such a duty exists if all of the following elements are met:

> 1. The principal or employer owes a duty of care to the third person, breach of which has caused the damage for which recovery is sought.
>
> 2. This duty is delegated by the principal or employer to the defendant.
>
> 3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances—whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
>
> 4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible

> subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.

*See Anderson*, 342 Fed. Appx. at 916 (*citing Canter*, 283 So.2d at 721).[4]

Thus, under *Canter*, the employee's duty is the result of the employer's delegation of a duty. See Gros, 2012 WL 5906724, at *6. The four-part test articulated in *Canter* is used to determine whether an employee is individually liable to third persons, even if they are not co-employees. *See Anderson v. Georgia Gulf Lake Charles, L.L.C.*, 342 Fed. Appx. 911, 916 (5th Cir. 2009) (citing *In re 1994 Exxon Chemical Fire*, 558 F.3d 378, 386 (5th Cir. 2009)). Personal liability is not imposed on the employee simply because of his general administrative responsibility for performance of some function of employment; rather, he must have a personal duty to the plaintiff that was not properly delegated to another employee. *See West v. Home Depot U.S.A., Inc.*, 2021 WL 4622213, at *3 (E.D. La. 2021) (citing *Brady v. Wal-Mart Stores, Inc.*, 907 F. Supp. 958, 960 (M.D. La. 1995); *see also Canter*, 283 So. 2d at 721. A store manager cannot be held personally liable for an incident if the store manager was off-duty on the date in question. *See West*, 2021 WL 4622213, at *3. Managers are not personally liable for injuries while off-duty, or without any connection to the accident other than general managerial responsibilities. *See West*, 2021 WL 4622213, at *3; *Watson v. Daniel*, 2015 WL 737650, at *4 (W.D. La. 2015), *report and recommendation adopted sub nom. Walton v. Daniel*, 2015 WL 737048 (W.D. La. 2015).

Johnson claims that Graham and/or Bishop had both managerial and personal duties to sweep the store and identify and correct dangerous conditions, and that one or both of them breached their duties to do so on the day Johnson was injured. ECF No. 12 at 3. Johnson then lists the following potential bases of liability for Graham and Bishop:

a. Failure to do as a reasonable store manager should do;
b. Failure to keep a good and proper lookout;
c. Failure to make sure the store employees swept the store on regular intervals;
d. Failing to identify substance;
e. Failing to teach store employees how to identify and correct dangerous conditions;
f. Failure to warn of the substance;
g. Failure to see what should have been seen;
h. Failure to take proper precautionary actions;
i. Res ipsa loquitur; and
j. Negligence per se.

*Id.*

Construed broadly in Johnson's favor, ignoring their conspicuous dual or alternative applicability, and considered in the aggregate, Johnson's allegations fall short of *Canter's* requirements. Johnson does not adequately allege that either Graham or Bishop had – or breached – any duty that could be distinguished from the "general administrative responsibility" to perform" some function of employment. In fact, Johnson asserts no allegations against Graham that could approach the requisite standard. Cases rejecting such allegations as a basis of *Canter* liability are legion. *See, e.g.*, *Hayes v. Outback Steakhouse of Fla., L.L.C.*, No. 1:22-CV-00494, 2023 WL 2773642, at *6 (W.D. La. Mar. 17, 2023), *report and recommendation*

adopted sub nom. *Hayes v. Outback Steakhouse of Fla., LLC*, No. CR 1:22-CV-00494, 2023 WL 2766935 (W.D. La. Mar. 31, 2023) (and cases cited therein).

As to Bishop, however, Johnson's allegations contain additional, but clearly inadequate, details. In summary, and based upon the incident report, Johnson claims that Bishop inspected the floor at or near the site of his fall several hours beforehand. However, Brookshire submitted a sworn affidavit executed by Bishop to shed light upon this discrete – and here, dispositive – set of circumstances. ECF No. 17-1. Bishop stated that she is aware of Johnson's allegations and completed the incident report. *Id.* She clarified that Johnson's fall occurred around noon – not at 3:39 p.m., as erroneously noted in the incident report. *Id.* Brookshire correctly argues that those temporal parameters, even had they been accurate, would likely fall short of a plausible claim of personal liability against Bishop.

Nevertheless, Bishop clarified what occurred. *After* Johnson's fall around noon, and pursuant to company policy, Bishop inspected the area. *Id.* Any indication that the incident occurred hours later – Johnson's only potential avenue for personal liability – was simply an error. *Id.* And Bishop made clear that she had no knowledge of any substance on the floor that may have caused the incident. *See id.*

Moreover, Johnson's reliance upon this Court's decision in *Banks v. Wal-Mart, Inc.* is misplaced. No. CV 18-0749, 2018 WL 4001289 (W.D. La. Aug. 6, 2018), *report and recommendation adopted,* No. CV 18-0749, 2018 WL 3999720 (W.D. La. Aug. 21, 2018). In *Banks*, the plaintiff named a store greeter as a resident defendant. *Id.* at *4. But the plaintiff submitted a declaration indicating that she overheard an

assistant manager asking the greeter, among others, why a "wet floor" sign had been moved on a rainy day. *See id.* The Court indicated that this overheard conversation – in which an assistant manager may have discussed the breach of delegated, personal duty to the greeter – may have been "slight" evidence that the greeter had actual or constructive knowledge of the dangerous condition on the floor, and may have "increased the risk of harm to customers." *Id.* Given those atypical and specific facts, the defendant did not preclude the possibility of recovery against the greeter. *Id.*

There is simply no such evidence here. And to the contrary, Brookshire has submitted competent evidence that no such knowledge, delegation, or other personal breach of duty occurred. *Banks* is inapposite. And Johnson's claims thus do not satisfy *Canter*'s requirements.

## III.    Conclusion

For the foregoing reasons, IT IS RECOMMENDED that Johnson's Motion to Remand (ECF No. 9) be DENIED.

IT IS FURTHER RECOMMENDED that Brookshire's Motion to Strike (ECF No. 14) be GRANTED, that the First Amended Complaint (ECF No. 12) be STRICKEN, that all claims against Graham and Bishop be DISMISSED, and that Thomas Graham and Elizabeth Bishop be formally DISMISSED AS PARTIES.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P.

10

6(b).  A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause.  A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Tuesday, September 5, 2023.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE